[S. F. No. 4642.    Department Two.—March 9, 1908.]

GEORGE ENGWICHT, Respondent, v. PACIFIC STATES LIFE ASSURANCE COMPANY, Respondent, and TRUMAN REEVES, Treasurer of State, Appellant; J. H. T. WATKINSON, Intervener, Respondent.

LIFE INSURANCE—ASSESSMENT PLAN—TRUST FUND—"CONTRACT HOLDERS" — CONSTRUCTION OF STATUTE — DEBENTURE CONTRACTS — OPTIONS.—Under the provisions of the law of 1891 (Stats. 1891, p. 126), regulating life insurance by corporations formed to carry on the business of "mutual insurance on the assessment plan," and requiring the deposit of a secured trust fund, the securities for which were to be deposited with the state treasurer, and the principal sum was to be "held in trust for the contract holders of such corporation," the term "contract holders" imports holders of contracts of life insurance, and does not include general creditors, or holders of "debenture contracts," who have loaned money thereto, with mere options at maturity to take a life annuity, or, if in health, a paid up policy, and who have no interest in the trust fund, until all holders of insurance have been paid therefrom.

ID.—ACTION BY HOLDER OF INSURANCE TO CHARGE FUND—CREDITORS' BILL—NECESSARY PARTIES—ACTION BY COURT—INTERPLEADER.— All holders of contracts of insurance are entitled to share ratably

in the trust funds; and they are all necessary parties to a distribution thereof, which cannot be had except upon a bill in equity in the nature of a creditor's bill. One of them may invoke the aid of equity in enforcing his demand, but the court, with the corporation defendant and its books before it, should determine what other persons are entitled to share in the trust fund, and invite or compel their presence and participation by interpleader.

ID.—POWER OF COURT UPON HEARING OF CREDITOR'S BILL—DISTRIBUTION OF FUND—RECEIVER.—Upon the hearing of the creditor's bill, with all the parties interested in the fund before it, the court may make equitable distribution of the funds, and may appoint a receiver to carry that distribution into effect.

ID.—SUBSTITUTE METHOD NOT PERMISSIBLE.—The method adopted by the courts, of appointing a receiver at the instance of one party, with a command to all persons claiming any interest in the fund to appear and show cause within sixty days, is not a permissible substitute for bringing them all in as necessary parties to the distribution.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order appointing a receiver. John A. Hosmer, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Geo. A. Sturtevant, Deputy Attorney-General, for Appellant.

Under the causes of action alleged in the complaint and by the intervener, the court had no jurisdiction to appoint a receiver of the trust fund. (Civil Code sections 453 d. and p.; Code of Civil Procedure, sec. 564; *Havemeyer* v. *Superior Court,* 84 Cal. 327, 18 Am. St. Rep. 192, 24 Pac. 121; *State Inv. etc. Co.* v. *Superior Court,* 101 Cal. 135, 35 Pac. 549; *San Jose Bank* v. *Bank of Madera,* 121 Cal. 543, 54 Pac. 85; *White* v. *White,* 130 Cal. 599, 80 Am. St. Rep. 150, 62 Pac. 1062.) The intervener had no standing as such to intervene. (Code Civ. Proc., sec. 387. *Bilby* v. *McKenzie,* 112 Cal. 143, 44 Pac. 341; *Isaacs* v. *Jones,* 121 Cal. 257, 53 Pac. 793, 1101; *Rossi* v. *Superior Court,* 114 Cal. 371, 46 Pac. 177; *Wheat* v. *Bank of California,* 119 Cal. 4, 50 Pac. 842, 51 Pac. 47.) The intervener has no contract of life insurance, but one of loan merely. The options do not affect its character. The respondents have no lien on the funds in the hands of

appellant. (*San Francisco Savings Union* v. *Long,* 123 Cal. 107, 55 Pac. 708.)

Jellett & Meyerstein, for Plaintiff, Respondent.

The plaintiff had the right to institute this suit, and if there were other claimants they should have been set up in the answer, and have been brought in as parties. (*Kruger* v. *Life and Annuity Assoc.,* 106 Cal. 98, 39 Pac. 213; *San Francisco Savings Union* v. *Long,* 123 Cal. 110, 55 Pac. 708.)

Aitken & Aitken, for J. H. T. Watkinson, Intervener, Respondent.

The contract with plaintiff ran for life insurance at a single premium, in the nature of endowment insurance. (Cook on Life Insurance, sec. 107; 11 Am. & Eng. Ency. of Law, 2d ed., p. 26; *Endowment & Benevolent Soc.* v. *State,* 35 Kan. 253, 10 Pac. 872, 878; *San Francisco Savings Union* v. *Long,* 123 Cal. 115, 118, 55 Pac. 708; *Briggs* v. *McCulloch,* 36 Cal. 542.)

THE COURT.—Plaintiff brought his action as a policy-holder against the defendant life assurance company, to have determined the amount due him under his policy, to have that amount declared a lien upon the fund of five thousand dollars on deposit with the defendant Reeves as state treasurer of the state of California, and to have judgment that the state treasurer pay the same out of the trust fund of five thousand dollars in his possession. The defendant assurance company is one of those organized under the provisions of the statutes of 1891 (p. 106) and, following the life history of most of the companies of its kind, became as is alleged, insolvent, its only assets being the five-thousand-dollar trust fund in the hands of the treasurer

J. H. T. Watkinson filed his complaint in intervention, alleging that he was the owner and holder of a certain debenture issued to him by the company. He alleged the failure of the life assurance company to comply with the conditions of its contract as evidenced by the debenture, further averred the assurance company was insolvent and had no surplus to be apportioned, that its only asset was the

trust fund of five thousand dollars in the possession of the state treasurer, and that he was entitled to resort to this fund for the payment of his demand. He in turn sought judgment for the amount due him under his debenture, and prayed that a receiver be appointed to take possession of the fund in the hands of the state treasurer and to dispose of it under the directions of the court. The court found in accordance with the allegations of plaintiff's complaint and of the complaint in intervention, adjudged plaintiff to be entitled to the sum of two hundred and thirty-six dollars, and the intervener to be entitled to the sum of eight hundred and forty-eight dollars, decreed that these sums be first and preferred charges against the trust fund of five thousand dollars held by the treasurer, appointed a receiver, directed the treasurer to pay the five thousand dollars to the receiver and directed that the receiver, after receiving the fund, give due and proper notice requiring all persons having or claiming any interest in the fund to be and appear herein within sixty days and show what right, title, or interest they or each of them have or claim to have in and to said fund. From this judgment the treasurer of the state appeals.

The rights of the intervener may, with advantage, first be considered and disposed of. The law of 1891, under which this corporation was organized, received detailed consideration at the hands of this court in *San Francisco Savings Union* v. *Long*, 123 Cal. 107, [55 Pac. 708]. So far as concerns the right of this intervener, the following extracts from that law are pertinent:

"Sec. 1. Every contract whereby a benefit may accrue to a party or parties therein named upon the death or physical disability of a person insured thereunder, or for the payment of any sums of money dependent in any degree upon the collection of assessments or dues from persons holding similar contracts, shall be deemed a contract of mutual insurance upon the assessment plan. Such contracts must show that the liabilities of the insured thereunder are not limited to fixed premiums.

"Sec. 2. Corporations may be formed . . . to carry on the business of mutual insurance upon the assessment plan. . . . No such corporation shall issue contracts of insurance until at least 200 persons . . . have paid to the treasurer . . .

the sum of $5,000. This sum shall be invested in bonds or securities . . . Said bonds or securities . . . shall be placed . . . with the state treasurer, and the principal sum shall be held in trust for the contract holders of such corporation. . . ."

Section 1 above quoted contemplates a scheme of insurance against accident, disability, or death, whereby the insured shall pay no fixed annual premium, but shall be liable in the proportion which his insurance bears to the insurance of his fellows holding like insurance. Hence the provision that these contracts of insurance must show that the liabilities of the insured are not limited to fixed premiums, but will be as much or as little as may be necessary to make good the insurer's outlay whenever the insurer is called upon to pay a claim. The provision of section 2 that the five-thousand-dollar fund deposited with the state treasurer shall be held in trust for the contract holders of such corporation, means, first, that when the contingency arises whereby resort may equitably be had to this fund, all contract holders will be entitled to share ratably in it, and, second, that "contract holders" within the meaning of the section are not the general creditors of the company, though the company's debts to them may be evidenced by contract, but are the holders of insurance contracts issued by the company within the scope of its authority under this law.

The first and determinative question to be answered as to this intervener is whether or not he is such a contract holder. The reading of his contract compels an answer in the negative. The debenture, which is his contract with the company and upon which he bases his right to share in the fund as a contract holder, provided that the assurance company promised to pay at its office eight hundred dollars two years after date, with interest at the rate of six per cent per annum. This in its essence was the contract. True, the contract was confused, clouded, and befogged by other provisions usually found in the contracts of companies such as this, but none the less, stripped of these obscuring veils, such, and such only, was the contract. To illustrate, the debenture provided that the purchaser (called the subscriber), should at the maturity of the obligation be entitled, besides principal and

interest, to a surplus then to be apportioned. But it is impossible that there could be a surplus in any true sense to an assurance corporation operating upon the mutual assessment plan. Attached to this so-called debenture are two interest coupons, reciting that the assurance company will pay the beneficiary under this debenture forty-eight dollars (the amount of the annual interest) at its office, subject to the provisions of the contract. Hereby, as well as by the title "debenture", there is an attempt to clothe the transaction with something of the characteristics of a bond. Yet, as a bond, it lacks the essentials of carrying a lien or mortage upon any of the property of the promisor. Numerous other provisions are supposed to be added to this contract by reference. Thus, it is declared that "the privilege and provisions placed by the company on the next page and in the interest coupons hereto attached, are conditions precedent to and are part of this contract as fully as if they were recited at length over the seal and signature hereto affixed." A consideration of these provisions and conditions demonstrate that, touching this contract, they are but for purposes of confusion only. There is, for example, a non-forfeiture clause. But there can be no possible forfeiture against a man who has fulfilled every obligation in his contract by lending to another a given amount of money payable with interest at a specified time. There is a provision also for reinstatement which declares that after this debenture has been in force one year it may be reinstated within six months after first default in the payment of any installment. But there were no installments to be paid. There could be no default, and this clause also serves but to "darken counsel by words without wisdom." Again, in the "subscription" which is made a part of this contract it is provided that the debenture subscribed for is to be issued on the mutual plan of participation in profits *and the installment payments are not limited to fixed premiums.* Here is an attempt to comply with, and, in the same sentence, to evade the provision of section 1 of the act of 1891, to the effect that such contracts must show that the liabilities of the insured thereunder are not limited to fixed premiums. In the first place, the holder of such a debenture is not an insured at all, and, in the second place, having simply loaned his money to the company, he

is not liable for any premiums whatsoever, whether fixed or to be determined by assessment. Only in the last clause at the end of this contract is there the slightest reference to insurance, and that is found in the following sentence: "At maturity, if the subscriber be then living and if the proceeds of the debenture are not withdrawn in cash, the entire value of the debenture and surplus may be converted into an annuity for life or may (subject to a satisfactory certificate of good health) be converted into a paid-up policy of life insurance." But this may not, by the most liberal construction, be distorted into a life insurance policy. It is merely an option extended to the owner of the debenture to take a policy in lieu of the money if he shall so desire. It follows herefrom that the intervener has no claim upon the fund until the claims of all the contract holders have been satisfied.

Coming now to the complaint of plaintiff, it will be remembered that the appointment of a receiver is not sought, the prayer of the complaint being merely that the amount found due to plaintiff be declared a lien upon and payable out of the five-thousand-dollar fund, and that Truman Reeves, as treasurer of the state, be ordered to pay the judgment out of such fund. This form of action draws support from the case of *Kruger* v. *Life and Annuity Association,* 106 Cal. 98, [39 Pac. 213]. But the views expressed in that case are in irreconcilable conflict with those set forth in the later case of *Savings Union* v. *Long,* 123 Cal. 107, [55 Pac. 708]. It is there held, in brief, that the five-thousand-dollar fund is a trust fund to be ratably distributed amongst all the claimants entitled to share in it. Such a distribution cannot be had except in an action in the nature of a creditor's bill, upon the hearing of which, and with all the parties interested in the fund before it, the court may make equitable distribution of the fund and appoint a receiver to carry that distribution into effect. The method adopted by the court in this instance, of appointing a receiver with the command to all persons claiming any interest in the fund to appear and show cause within sixty days, is not a permissible substitute for the procedure prescribed in *Savings Union* v. *Long.* No doubt may be entertained of the right of the plaintiff under these circumstances to invoke the aid of equity in enforcing his demand,

but it will be a simple matter for the court, with the corporation defendant and its books before it, to cause a determination to be made of any and all other persons entitled to share in the trust fund, and invite or compel their presence and participation by interpleader in the action.

For which reasons the judgment and order appealed from are reversed and the cause remanded for further proceedings in conformity with the foregoing views.